And will you call the first case please? 3-13-0-5-0-9. Michael Miglio, executor of the estate of Jenny Miglio, deceased of talent by Emanuel Guyon v. Boyle and Boyle and Law Firm, et al., Emily, by Mitchell Corbett. Mr. Guyon, go ahead and come on up here. And by the way, we got a motion to cite authority and didn't receive an objection, so we're going to grant this motion to cite authority. It's a paragraph. Do you want to file a response within seven days? Your Honor, I was aware of that case in March, and so although I did not get it from the counsel until Tuesday afternoon, I honestly do not think it even has any bearing on what I'm arguing. Well, there's that argument, too. I'm not surprised by your response. May it please the Court, my name is Emanuel Guyon, counsel. Mr. Orpett, Mr. Bolin, I'm here on behalf of the estate of Jenny Miglio. In my brief, at page one of the brief, I've got some dates of the preceding estates and citation to the three statutes that I think are involved here. The statute of limitations for legal malpractice being two years, the statute of repose being six years, that applies in 214.3 BNC, and then 215, which is the fraudulent concealment statute. So what I view here is we have sort of a legal rugby session where we've got contesting statutes opposing each other, and the Court is going to have to pick which one applies as far as the legal malpractice. Statutes 214.3 BNC will predominate over the fraudulent, which I don't think it should, and I've cited the case of Kahn v. Deutsche Bank in the brief, a 2012 case, where the Kahn case reviews what happens and talks about the discovery rule. And the cause of action accrues when an injury has occurred and is wrongfully caused, but the statute doesn't begin to run until the party has been given a reasonable opportunity to discover the facts to see if there's an actionable claim. That's a recent case, 2012, the Riseboro case that the defendants cited, which the Court said I had the opportunity to answer. I think it's a completely different animal, because in Riseboro, the people that were involved in that case were all sitting at the same table and they came to a deal. And then after one of the parties, I think it was Standard Insurance or something like that, statewide, they were supposed to contribute $650,000 or something like that to the $4.5 million settlement. Well, after a period of time and after giving a check that bounced, then Evanston Insurance decided we don't want a part of this deal. So what happened is they sort of had seller's remorse and then they eventually started litigation and the court said, the ruling in the Riseboro case said that they missed the 6 year statute of repose. But the fact is, they knew about the facts in Riseboro all along. It wasn't something that they didn't know. So in my case, the Miglio case, the estate was the value of $3.2 million. The testator left the $3.2 million, $2 million to her family, and the balance to charity. So what we're really protesting about here is when the 7th daughter died, let me go back to the 6th daughter. When Frances died in 2000, the estate tax that was assessed and paid was $155,000. Antoinette died first, then Frances in 2000. Section 2013 of the Internal Revenue Code says that if you have assets that are taxed consecutively, you get a credit. 2013 of the Internal Revenue Code. So there was an 80% credit. So the $155,000 that was paid in Antoinette's estate in 1998, and then when you calculated assessing the assets in Frances' estate in 2000, her tax was $135,000. But she should get a credit of 80% of $155,000, which would be a net payment of $12,000 after you take the credit. For whatever reason, the IRS was given the $135,000 and no claim for refund was ever made. I'll tell you, the lesson I've learned, I've been in practice 40 years, and the lesson I've learned is never give the IRS any money because it's going to be hard to get it back. I'd have done the calculation, paid them the $12,000, and if they wanted to argue about it, let's talk about it. Anyhow, so when I was doing the Jenny McNeil, which is the last of the eight daughters to die, the way I interpreted the charitable deduction, I thought I had to calculate the amount of the credit and then apply it against Frances' estate. Well, what I did is I went to the Putnam County Courthouse, found out those numbers, $155,000 and $135,000, and I thought, well, if they get a credit, how much do they pay and how much do they get back? That's the part I couldn't figure out because it wasn't reported in the Putnam County records. So then I wrote the IRS and tried to get it from them. And they were reluctant. They started telling me I had to file a Form 843 claim for refund. I said, okay, I'll do that. But I couldn't get any information out of anyone. And I'm telling you what we did to try to find out the facts. So eventually, I thought the only way I'm going to get this done is to file a suit in federal district court, which I did. We filed a suit and after a period of time, well, actually, there wasn't much development because the 1286 motion was granted by the district court judge saying that the three-year statute to claim a refund had expired. Judge Aspen was the judge, and he was a very good judge, former IRS agent, and I know that he's very capable and certainly knows the tax code. He said that right to claim the refund was personally janitored. So when that litigation was concluded, then I filed the suit in Putnam County. And even then, it was pretty tough getting information out of the defendants. I had to file a motion to compel to get the tax returns. I had to go there on a day that was set and I was told, okay, you can have them. That's when I really found out what was done, that there was no claim to refund made. So Jenny Biglio, the surviving sister, lost $123,000, and that's why we filed the lawsuit. Your Honor, I think that, and I've set out in my brief the fact that the attorneys are in a fiduciary relationship to the client. They have to disclose if they've done something wrong, namely failing to file a claim for refund, which they did not. In the Kahn case versus Deutsche Bank, they said that those statute of limitations and the statute of repose are told where there's a fiduciary relationship. That is not the same as in Riceboro. I don't see a fiduciary relationship arising in that case. Mr. Riceboro represented an insurance company, and his client knew exactly what was going on all the time. So it wasn't a matter of someone not knowing what the facts were, as we were faced with. So I really don't think that Riceboro lends much to your decision making in this case. I think that Kahn is the proper case to consider in determining whether or not there's legal malpractice involved here and whether or not we should be entitled to go forward in the trial court to prove our case. And remember, this is not a decision on merits. We're here on a decision of dismissal, 619 dismissal. Mere silence on the part of a defendant when he has a duty to speak, that equals fraud. And there's a case, Kenroy, that I've cited in the brief, and also I think Kahn might have mentioned that, but I won't say for sure. But if the attorney has the obligation to advise his client to speak when he knows something, he has the obligation to do that. And the fraudulent conduct that I think existed in this case that is cited in the Kahn case and referenced in the brief, they also, in the Riceboro and in my case, I cite DeLuna v. Versiaga. And I just want to read a short quote out of the Versiaga case. And this is in the decision. Quote, before we conclude, we wish to take this opportunity to encourage the legislature to undertake a comprehensive review of Article 13 provisions pertaining to statutes of limitation and repose. Greater specificity and uniformity in that area of law would obviate the need for courts to so often speculate as to the General Assembly's intent. 214.3 B and C were put into effect in 1991. DeLuna is a 2006 case. I believe that, I shouldn't say it because the fraudulent statute, I think it's different, I think it was made in 97, but I have it here and it's in the brief and appendix. But anyhow, there's a lot of guessing that's going on in this area of law where which statute should you pick when you're talking about where you have a fiduciary relationship as we have in the case at Barr or as in the Riceboro case where I don't see that there's a fiduciary relationship at all between the attorney and the complaining party, the Emerson Insurance Company. Everybody knew what was going on in that case and again, I think what caused the deal to fall apart, they apparently made an agreement that they were going to pay $4.6 million and then when one insurance company bounced a check, they had agreement remorse, I guess, and decided that they were going to pull out and then they tried to pin the loss on the attorney. And his defense was there's no attorney-client relationship. I was there, I represented you, you knew what was happening, and actually, Emerson, I think they were claiming he was a third-party beneficiary of whatever deal was made. That's what I read Riceboro. Okay, and then, Your Honors, I want to just also point out, and in my brief I talked about this, but there's a difference between a right of action and a cause of action. Right of action, in a case of this nature, is duty, breach, causal relationship and a breach of that duty. But there's no, that's a right of action, but there's no cause of action that comes into being until you can assert damages. So when did we know we couldn't get the money back? It's when the IRS said, you're not getting it back, the statute of limitations in the Internal Revenue Code is three years, so in 2003, at the earliest, maybe 2004, if there was an extension of time granted, that's when that money had to be claimed in refund. And that's, we were not involved until 2007, and until Mr. Miglio was appointed as executor of the estate, Michael Miglio, May 10th of 2007, and I started working on this, that's when the facts started to come out, and actually, the end result of what I'm trying to do here is I think there should be more money available for the charitable beneficiaries of the estate. And Mr. Miglio has an obligation to collect all the assets, and I think we should get some money back. We couldn't get it back from the IRS, and I don't mean to be funny, but I think the IRS is basically saying we stole it fair and square, we don't have to give it back, we don't, you know, we're not entitled to it, but we don't have to give it back either. So the last Miglio heir, recipient of this estate that's trickling down to children, right, I suppose, or some relationship, you're saying that that estate corpus that's in probate, or was in probate, I don't know, it's in probate, is going to charity, is that correct? That's correct. But it's 70% transferred to charity. There should be the $123,000. Well, you're saying that that should be included in that. I don't know if the transfer is going to charity. That's right. Okay. And also that means that the IRS, while they might want to be a charitable institution, I don't think they should get the money. Council has two minutes. Thank you. Okay. Also I want to point out in Riceboro that some of the arguments that they may have had available to them were not submitted to the trial court until they filed a petition for reconsideration. And the court said, when you do that, you waive those arguments. So I think they may have been able to succeed if they had made the proper arguments, but they didn't. Do you have any questions? No. No, sir. Mr. Gahan, thank you. Mr. Arbett? Yes, sir. Good morning. May it please the court. Mitchell Arbett for the defendants. With me today is Mr. Boland, one of the defendants in the case and co-counsel in the Putnam County proceeding. And I have to start with an apology this morning because I was appalled as I walked in the courtroom this morning and pulled out the briefs for a last look before the argument to see that on our own, the cover of our own brief, I put the wrong first name, Mr. Boland. So I just wanted to let the court know that I apologize for that confusion. I do know who my client is, and I wanted to correct that typographical error, but a rather embarrassing one. Hopefully that's the last mistake of the day. This is a case that involves a complaint, a second amended complaint eventually that was dismissed with prejudice after several preceding complaints have been dismissed with leave to amend. There were three counts to that complaint, and I think it's important to kind of look back and see what the trial court ordered in one. First count was always legal malpractice. The second count eventually became a purported cause of action for fraudulent concealment, by which it seemed to be fraudulent concealment in the way that it is used to toll or attempt to toll a statute of limitations under Illinois law. The third count was fraudulent misrepresentation. A couple of things about which there is no argument, I believe, between the plaintiffs and the defendants that are important to the analysis of that second amended complaint. The first is that there is no argument that the claim being made in its entirety, regardless of the count, cause of action, is a claim against attorneys. There's no argument that it is a claim against those attorneys that arises out of an act or omission of those attorneys in the performance of professional services. That being work that was done by Mr. Bowman's partner in the firm, Mr. Boyle, on the estates of the first two sisters whose estates you've heard about here today. The only way I've remembered it, I'll pass it along to the court, is it's an alphabetical order. Antoinette was, her death was first, the work was done in 1998, Francis was second of these estates, and the work there was done in the year 2000. So it is that work, the professional services being done for the estate, that is the basis for this claim. So why do I bring this up, that there's no dispute about a claim against attorneys arising out of acts or omissions in their professional services, and that is because that is the language of the statute of repose and the statute of limitations dealing with attorneys, which the court knows is section 514.3. And the other important part of that statute is that an action for damages based on tort, contract, or otherwise is subject to the six-year statute of repose,  and I bring this up as a preface to the main argument here. So is it tort, is it contract, or is it otherwise? Well, I think that the fraudulent, I think they're all tort. They all sound in tort, but the point I'm making is we spend time in our brief, but I really don't want to spend a lot of time here on it unless the court has questions, talking about how the elements of fraud and specificity and intent and all the like are not met. That the pleading itself is deficient under the standards applicable to those causes of action. But the principal argument, and I think the principal dispute here, is that the legal malpractice claim, that the statute of repose is the court order applicable to bar the claim, we're not just talking about count one legal malpractice. We're talking about all the causes of action because all the causes of action are against attorneys dealing with their acts or omissions in professional services. Do you know, is there a similar statute of repose for CPAs? There is. I was about to say yes, and now I'm hesitating. I don't recall, frankly, whether there is or not. I know there is with obviously the doctors, and I know some of the cases that were cited in the briefs are dealing with the statute of limitations questions on the CPAs. And what's interesting there is that all the cases, including Conn, which plaintiff relies on considerably, say that the injury occurs to the estate upon the deficiency notice. And Conn, the Supreme Court, cites the case of, I believe it's the Ferguson-McKenzie case. It's another Supreme Court case. It says upon overpayment, that's the injury to the estate. And that a refund, seeking a refund of an overpayment, is in the nature of mitigation of damages. But those cases support, and Illinois law is replete with cases that say, indicate that when the deficiency is noted in the estate, that when the overpayment is made, that's the injury. So we respectfully disagree with Mr. Guy on the statement that it's a right of action, but not a cause of action until after the tax case is completed. Because the Illinois law is contrary. When the overpayment is made, that's the injury to the estate. And that's when the clock starts? It is when the clock starts. It's the latest when the clock starts. But I want to go back on the statute of repose, if I may, because that was the basis of Judge Borden's ruling dismissing the second amendment, dismissing the legal malpractice count, which was on count one, and upon reconsideration by Judge Brandt. Statute of repose, and this is one of the reasons we cited the Riseboro case, but it's not new law. It's just a clearly stated principle. Illinois law, well settled, statute of repose designed to terminate the possibility of liability after a defined period of time, in the key language here, regardless of a potential plaintiff's lack of knowledge of his or her cause of action. That's the Riseboro case, it's Ferguson, it's Goodman, it's preferred personnel versus Meltzer. There's a lot of cases that cite that language. Now in legal malpractice actions, the repose period under Illinois law begins to run in the last act of representation on which the malpractice is founded. And that's kind of what's gotten lost, I think, in the plaintiff's argument in this case. Again, in a legal malpractice case, the repose period, not the statute of limitations, but the repose period begins to run with the last act of representation on which the malpractice is founded. That's the Troji case, it's the O'Brien versus Scoble case. Here, no argument, last representation by the defendants, October of the year 2000, when the estate tax was filed. If you wanted to... That's Antoinette. That's Francis. 1998 was Antoinette, Francis was 2000. So that's when the credit should have been calculated. Exactly. And even if you want to extend it beyond the representation itself to the refund period, which someone could have stepped back in to claim a refund another three years, at most we're up to 2003. Clearly, under the law and under the allegations of the complaint, you're not even dealing with the representation there, you're dealing with a post-representation period, giving the plaintiff any benefit to suggest that the error somehow continues until the refund could no longer be obtained. It still takes it at most to 2003. I don't think that's the law, but even if it were, it takes us to 2003. And this suit was filed in 2011, so we're well past. It's 11 years from the last representation, more than 11 years, and it's eight years past the time the refund could have been applied for. After that, the complaint is silent. There is no allegation, despite many attempts or many opportunities, I should say. There was really no attempt. No allegation of any relationship between the defendants and the plaintiff or the plaintiff's decedent, Jenny, after the year 2000. There's no allegation of any communication at all between the defendants and Jenny or the estate after October of 2000. There's no allegation of any representation, any attorney-client relationship, and therefore any fiduciary relationship after October of 2000. So there is no basis that is hinted at in the DeLuna case or suggested by that case where you had in DeLuna affirmative misrepresentations being made to an existing client about the status of a case that had been dismissed, that the attorney was apparently saying was on appeal, or was on appeal, but he hadn't said had been dismissed, that he had failed to file an affidavit that was required. The case had been dismissed. And while the case is being appealed and the attorney-client relationship is still going on, he tells the clients that everything's fine, you don't need to talk to me too much. And there's an affirmative misrepresentation there. And the fiduciary relationship, unquestionably, is still going on in that case. In this case, last representation in the year 2000, October 2000, no relationship, no communication, no fiduciary duty alleged or existing beyond that time. So again, the suit's filed 11 years later. And the indication in counsel's discussion at the end of his remarks about the difference between a right of action and a cause of action, Illinois law is clear that the case is dealing with statute of repose. Indeed, the Riseboro quote that we cited, which is not original to the Riseboro case, is that the injured party no longer, after the expiration of the repose period, the injured party no longer has a recognized right of action. So it's not dependent on this false distinction between a cause of action and a right of action. Illinois Supreme Court has stated many times, the latest one in February of this year, that after the six-year period, which is designed to terminate liability, potential liability, the injured party no longer has a recognized right of action, much less a cause of action. So we believe that the judges in the trial court got it absolutely right on the statute of repose. We think it's a clean record on the allegations of the complaint. They had no choice. We point out that we also believe that the statute of limitations applied in this case, that the tolling, at the latest, the statute would have begun to run in November of 2009, when the plaintiff, by his counsel, wrote to the IRS, and this is the record of page 68, saying, we're looking for a refund of this tax. There's an indication that they know that the IRS wasn't going to let them have the refund. The letter cites a conversation with the IRS saying, we've been told we're not getting it under any circumstances, but we're still filling out the form. So clearly, in more than two years from the filing of this suit, in November of 2009, the plaintiff knows that the refund wasn't claimed, knows that it's already calculated the amount, knows that the defendants were the attorneys who didn't claim it, and knows that there's a problem, and knows that they're not getting it back from the IRS at that point, because they've been told that by the IRS. So like any plaintiff, like any party who believes it's agreed, that has the opportunity to go and seek a remedy. Had a suit been filed at that time, or two years from that time, within two years, knowing that the defendants had allegedly failed to apply for this credit that was purportedly available, we wouldn't be having an argument about the statute of limitations. We might still have an argument about a statute of repose. But we thought the court could have dismissed on that basis as well, point out to this court that either one is sufficient to bar the entire litigation here, and we believe that under the statute of repose and the statute of limitations, there's no cause of action. I mean, is that the case with every, is that what a statute of repose is? I mean, whether it's legal malpractice or anything else, there's just no discovery period? There is no tolling for discovery. The repose cases are clear that the knowledge, that's why I started out with that quote, that the knowledge of the plaintiff or potential plaintiff, his or her cause of action, it's regardless, it applies regardless of the plaintiff's knowledge. It is designed to end claims, regardless of whether the person knows it's there or not. So it sounds harsh to many. It did not sound harsh, or if it did sound harsh to the legislature, they passed it anyway. They got over it. They got over it. And it exists in other professions as well. Oh, absolutely. It exists commonly in most states across the country. Repose periods are part of the construction industry as well. With regard to your opposing counsel's argument that this alternative count, and by silence there was concealment, that changes everything, and it's not in this Riceboro box. I think he's correct that Riceboro is not a, at the point, I think the main point of the Riceboro case was that it was a claim by a non-client of the Riceboro firm. So I think he's correct about that. Where I disagree, that doesn't mean it's support for the argument that in this case, silence somehow terminates or emasculates the statute of repose, or makes it inapplicable. And there are several reasons for that. Thank you. First of all, there was no attorney-client relationship after October of 2000. So there is no continuing fiduciary duty. There is no misrepresentation, affirmative misrepresentation, which could be coupled with the silence as there was in De Luna. And as much as De Luna talks about silence, De Luna also rests on the facts of that case, which is affirmative misrepresentations. But also point out that there's no allegation in this complaint at all, nor any suggestion in any fact of record, that the defendants, assuming all the allegations about the credit are true, I don't mean to suggest either way, but assuming it's all true for purposes of the motion, as we must, there's nothing in the record, nothing in the allegations of the complaint, that suggests that the defendants ever knew that there was a credit to be claimed, never knew that they had, quote, failed to do something or committed malpractice, never any suggestion or allegation of an intent, in fact, of an intent to deceive the plaintiffs. And in fact, in plaintiff's brief, plaintiff on a number of occasions says, whether intentionally or carelessly, well, carelessly isn't wrong. And so the cases in which a fiduciary duty is used as a basis for suggesting that a fiduciary who is silent when he or she has a duty to speak, that that can somehow hold a statute of repose. Well, we don't have to get to that issue here because there was no duty to speak. There was no failure to speak. There was no silence in the way that those cases talk about it because there's no relationship. Well, let me ask you this. Go ahead. If you took the argument of closing counsel and advance it forward that there's continuing duty until it becomes futile, the act, which would be the act of seeking a refund, you're saying that even calculating that time, the repose statute bars? Correct. Okay, because that's not a bad argument there that you have – you want to stop the fiduciary duty at the time that the estate was closed, arguably. Am I correct? Well, I think under Illinois law, I think the relationship ended when the estate was closed. I think that was the end of the representation. It's a colorable argument to say no, not when, for the benefit of the estate, you have continuing fiduciary duty until that act can no longer be effectuated, which would have been moving it forward until the three years. As we've said on other circumstances, I could get over it if that were to be the announced law. I understand the potential policy reasons for doing that. I'm not sure that that's the law now, and therefore I don't think that that can be the basis for – especially here. Again, there's no suggestion of a knowledge. So basically, if I commit an error today and I go to my deathbed without any suggestion that I ever knew I had committed an error, how can there be a duty to speak? It becomes the classic – everything a lawyer ever – or any professional ever does is subject to second guessing, and there will never be a statute of repose because as long as I'm deemed to possibly have a way to correct something and take action to correct something, whether I know I need to do it or not or whether there's even been an error committed, it essentially means there's no statute of repose for that entire period of time. Let me ask that question just a little different way because apparently we're thinking the same thing. So client A comes in to see lawyer B, and lawyer B does something that, on behalf of the client, that in plain English causes damage. In other words, files something, does something, it's going to cost his client some money. And he does it, and the lawyer knew or should have known that this was wrong. Not intentionally, I don't know. And then the client walks out the door, everything's gone. And again, assuming the lawyer knew or should have known that what he did was wrong and he just damaged his client, and there's some window of time, two years, three years, whatever it is in which that error could be corrected by the lawyer who made it, you're saying he's got no duty to speak or to fix that error within that time. If it's something, like I said, not necessarily of evil intent or anybody suggested it, but it's still something that a reasonably qualified lawyer should have known, would be expected. Well, I think, first of all, there are differences between ethical duties, ethical obligations under Illinois, and legal malpractice. Every breach of an ethical obligation is not constituted malpractice. So if your question were, is there an ethical obligation, I think probably yes. I'm not sure, in fact, I'm pretty confident that the way under Illinois law, that the answer to your question, if it's phrased as legal malpractice, fixing a legal malpractice matter, if there's a duty, a legal duty, I think that depends on the nature of the work done, the nature of the mistake done, and very specifically on the nature of the relationship and what the facts show about the retention and duration of the attorney-client relationship. Because it's the relationship that's the wellspring of all the duties. And if the relationship is shown to be ended and understood to be ended, I would suggest that the facts would be very clear, as a matter of law, in this hypothetical, that there would be no legal duty to step forward. I have a question before you step down, please. And that is, so under your view, the time period started in October 2000. For papers of the repose. For the repose statute. Yes. However, hypothetically, your view is, and you're not accepting that, but hypothetically, you're saying even if it was extended by the refund period, to get a refund from the taxes, which would be an extension of the lawyer found out about it or would not, they could seek a refund, that would add three years. Correct. And under your view, that still doesn't cover... Still leaves eight years to the filing of the suit. And I think that irrespective, as required by Illinois law, don't pay attention to the knowledge of the plaintiff in that sense. We're not arguing about the knowledge of the plaintiff. Nor under Illinois law do we have to. And to the alternative lawsuit, your view discounts that, saying that, are you saying this Riceboro case, it ultimately always comes back to there's a claim because they didn't seek legally a refund, so it's a thing arising out of professional obligations. Well, Riceboro, the narrow issue in Riceboro is, is a claim against a lawyer by a non-client subject to the same statute? The answer is yes. We know we're not dealing with that precise issue here, but in applying the statute of repose and answering that question, yes. The court makes it clear that the statute of repose is something that is designed to and does effectively terminate potential liability of a defendant after passage of a certain amount of time, regardless of the knowledge of the potential plaintiff, and cuts off the right of action, whether it's a right of action or a cause of action, irrespective of injury. If we were to get into an angels dancing on the head of a pin kind of argument, the most bizarre law school exam or bar exam hypothetical about whether this is really an injury or not, which isn't the case here because the injury occurs upon date of overpayment. There's no dispute about that in Illinois law. But even with a bizarre hypothetical, under Riceboro, and Riceboro's not brand new law, there's a litany of cases, but under the Supreme Court pronouncements on this, you don't pay attention to the plaintiff's or potential plaintiff's knowledge of the cause of action or the right of action. You don't pay attention even to the specific injury. It's the acts arising out of the representation that can create liability that the legislature has decided after a certain amount of time cannot be the basis for liability. I guess another way of, the question I was asking, your position is, one way or another, this is all arising out of professional services. Oh, I don't think there's any argument, even from Mr. Kion on that. Whatever you say, fraud, concealment, it's all out of professional services. Absolutely. And interesting, which is not the Illinois law, which I agree with you, if we move forward, move the ball forward those three years, there's nothing out there at this present time that that three years of potential corrective action is the rendering of, or obligation to render, obligation to render professional services. Correct. If the court has no other questions, I thank you for your attention and your time. Thank you, Mr. Harbert. Mr. Kion, some rebuttal. Your Honor, some rebuttal. Whose obligation is it to communicate to the client? It's the attorney's, isn't it? When you go into an attorney's office for a state proceeding, probate proceeding, basically most people put their hands in the hands of the attorney and say, do what you've got to do. Jenny Miglia was 96 when she died. Her will, I've forgotten it, but she was probably 90 when she wrote the will. Our problem was we could never discover the facts, and the court knows under Supreme Court Rule 137 we've got to have facts that support our cause of action. I can't just file something and try to get through discovery the facts that comprise the cause of action. So I had to kind of do it in a roundabout way, and the only way I could figure out how to do it was to contact the IRS. Now, from what I've just heard, and perhaps Justice Holdridge, I don't know if you said you agree, but if the attorney's position is tell the client to write a check for $135,000, and if you want a refund, that's your problem. Don't tell me about it. But he didn't even say that to her. He didn't tell her about it. And laypeople are unknowledgeable about the tax code and how complicated it is. You hear it on the television about how we need a simpler tax code. In my office I have the CCH volume of the tax code. There's two volumes, 3 1⁄2 inches thick, of 8-pound paper, the vellum-type paper, 10,000 pages. You expect the client to know that? Attorneys are supposed to know that. That's why we hire them. Not me, but that's why Jenny hired them. So is the client expected to know that she should file a claim for refund? In my opening remarks I said, what I would have done is a little calculator, $135 is the tax, we get a credit of $123, send them a check for $12, and let's fight about the rest. If you want to take some more tax from us, that's what I would have done. It's unfair to put the burden on the client. Council may be... With regard to that point, I guess you're opposing Council's saying, he doesn't think it would be correct, but even if you add that 3-year period, you still have a problem with the statutory clause given Illinois law. No, I don't. I don't agree with that. I'll tell you why. In the case of Mega v. Holy Cross Hospital, out of the Riceboro case, again, two sentences. The statute of repose extinguishes an action after a fixed period of time regardless of when the action occurred, citing DeLuna. The purpose of repose is to terminate the possibility of liability after a defined period of time, and cited Mega v. Holy Cross Hospital. Now, Justice Miller in Mega v. Holy Cross Hospital said that invocation of a statute would be prevented due to equitable estoppel or in cases in which the cause has been fraudulently concealed. That's what happened here. It's fraud. It's 215. It's the basis of this lawsuit, and I think that's why we should be in court. And I might add that in one of the... Is that a statute of limitation or a statute of repose? Repose. I mean, this Riceboro citation is the repose period. The quote, head note three in constitutional law, that's where it starts from. The court said that if the cause has been fraudulently concealed, then you don't apply the statute of repose until the facts are known or reasonably could have been known. We didn't have a chance until May 10, 2007 when he was appointed as executive. Also, Your Honor, I would just say last... Which case again? That's the Mega v. Holy Cross Hospital, Your Honor, and I just have... Well, I do have a whole case here. No, it's cited in the... Oh, yes, yes, it's cited in the brief. Also, there was a comment made about it's unfair to be going around second-guessing. That's not what we have here. When you go to an attorney, he should do it right the first time. And when he's called on it that they did do it right, well, I think my executor has an obligation to marshal assets of the estate. He has an obligation to do that, and I have the obligation to do that. So I think that's paramount in what we're doing here. I know Mr. Boland, I've met Mr. Orpa through this case, and they're both fine gentlemen, but I think I have an ethical obligation to recover that money to the charities. And I might add, just... It's not in the record, but there's 8 charities, and the Miglio family had 8 daughters. And that's why Jenny, when she did this, and they're identified in the brief, they got, I think, $110,000 apiece was their share. And she was very generous. And that had nothing to do with the merits of the case, but I'm just telling you as a background. That's why there were 8. Let me ask one more question. Do you know whether the statute limitations or statutes are opposed any different for accountants and CBAs? Your Honor, in my rulebook, it's on the same page. I don't know if it's different, but it's cited there. It's in the 210, 11, 12. I just wanted the time. Your Honor, accountants are considered professionals, and I think it's on the same page with the 214.3 statute. Thank you, and it's been a pleasure meeting you. Thank you, Mr. Guyon. Thank you, Mr. Orbit, for your arguments here today. The matter will be taken under advisement. Written dispositions will be issued. Before we go into recess, I'll tell you, in case that wasn't clear, your motion today on authority is granted. And as I said, Mr. Guyon, should you choose to, I got the impression you've got seven days if you want to file something in response to it. And we'll be in a brief recess for a panel change before the next case.